# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

KRISTIN MIA MORGAN,

              Plaintiff,

  v.

NANCY BERRYHILL, Acting Commissioner of Social Security,

             Defendant.

Case No. 3:17-cv-05500-TLF

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

Kristin Mia Morgan has brought this matter for judicial review of defendant's denial of her application for disability insurance and supplemental security income (SSI) benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court affirms the Commissioner's decision denying benefits.

## I. BACKGROUND

Ms. Morgan filed an application for SSI benefits and another one for a period of disability and disability insurance benefits, both on July 10, 2014.[1] Dkt. 5, Administrative Record (AR) 20. She alleged in both applications that she became disabled beginning June 19, 2013. AR 20. Those applications were denied on initial administrative review and on

---

[1] SSI benefits are based on whether a claimant is "aged, blind or disabled", and whether the claimant has income and resources that fall below certain thresholds. 42 U.S.C. §1382(a). This is different from Social Security Disability Income benefits (SSDI). SSDI benefits are based on earnings, and the benefits are limited to the period of insurance. 42 U.S.C. §§ 401(b), 423(c)(1), (d)(1)(A). The legal criteria for deciding whether a disability exists is the same under both SSI and SSDI. *Diedrich v. Berryhill*, 874 F.3d 634, 637 (9th Cir. 2017).

ORDER - 1

reconsideration. AR 20. A hearing was held before an administrative law judge (ALJ) on December 15, 2015. AR 38-61. Ms. Morgan and a vocational expert appeared and testified.

The ALJ found that Ms. Morgan could perform jobs that exist in significant numbers in the national economy, and therefore that she was not disabled. AR 20-32 (ALJ decision dated December 15, 2015). The Appeals Council denied Ms. Morgan's request for review on May 18, 2017, making the ALJ's decision the final decision of the Commissioner. AR 1. Ms. Morgan appealed that decision in a complaint filed with this Court on June 29, 2017. Dkt. 1; 20 C.F.R. §§ 404.981, 416.1481.

Ms. Morgan seeks reversal of the ALJ's decision and remand for an award of benefits, or in the alternative for further administrative proceedings, arguing that the ALJ misapplied the law and lacked substantial evidence for her decision. At step three of the five-step "sequential evaluation process," the ALJ determined that Ms. Morgan does not have an impairment or combination of impairments that meets the criteria of an impairment listed in the regulations. AR 23; *see* 20 C.F.R. §§ 416.920(d), 416.925, 416.926. Ms. Morgan does not challenge this determination. The ALJ determined at step four that Ms. Morgan could not perform her past relevant work. AR 30-31. Ms. Morgan does not challenge that finding. Ms. Morgan contends that the ALJ erred in assessing her residual functional capacity and finding her not disabled at step five of the sequential evaluation process. In particular, she alleges that the ALJ erred in rejecting certain medical opinion evidence. For the reasons set forth below, the undersigned concludes that the ALJ properly applied the law and substantial evidence supports his decision. Consequently, the undersigned affirms the decision to deny benefits.

## II. STANDARD OF REVIEW AND SCOPE OF REVIEW

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.520, 416.920. If the ALJ finds the claimant disabled or not disabled at any particular step, the ALJ makes the disability determination at that step and the sequential evaluation process ends. *See id.*

The five steps are a set of criteria by which the ALJ considers: (1) Does the claimant presently work in substantial gainful activity? (2) Is the claimant's impairment (or combination of impairments) severe? (3) Does the claimant's impairment (or combination) equal or meet an impairment that is listed in the regulations? (4) Does the claimant have residual functional capacity (RFC), and if so, does this RFC show that the complainant would be able to perform relevant work that he or she has done in the past? And (5) if the claimant cannot perform previous work, are there significant numbers of jobs that exist in the national economy that the complainant nevertheless would be able to perform in the future? *Keyser v. Comm'r of Soc. Sec. Admin.,* 648 F.3d 721, 724-25 (9th Cir. 2011).

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576). If more than one rational interpretation can be drawn from the evidence, then the Court must uphold the ALJ's interpretation. *Orn v. Astrue,*

495 F.3d 625, 630 (9th Cir. 2007). The Court may not affirm by locating a quantum of supporting evidence and ignoring the non-supporting evidence. *Id.*

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason the ALJ did not rely on. *Id.* Only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

### III. THE ALJ'S CONSIDERATION OF THE MEDICAL EVIDENCE

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "'questions of credibility and resolution of conflicts are functions solely of the [ALJ]'" and this Court will uphold those conclusions. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). As part of this discretion, the ALJ determines whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant" in deciding how to weigh medical opinions. *Id.* at 603.

The ALJ must support his or her findings with "specific, cogent reasons." *Reddick*, 157 F.3d at 725. To do so, the ALJ sets out "a detailed and thorough summary of the facts and conflicting clinical evidence," interprets that evidence, and makes findings. *Id.* The ALJ does not need to discuss all the evidence the parties present but must explain the rejection of "significant probative evidence." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted). The ALJ may draw inferences "logically flowing from the evidence."

ORDER - 4

*Sample*, 694 F.2d at 642. And the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

To reject the un-contradicted opinion of either a treating or examining physician, an ALJ must provide clear and convincing reasons. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). When other evidence contradicts the treating or examining physician's opinion, the ALJ must still provide "specific and legitimate reasons" to reject that opinion. *Id.* "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Id.* (quoting *Magallanes*, 881 F.2d at 751). In either case, the ALJ's reasons must be supported by substantial evidence in the record. *Lester v. Chater,* 81 F.3d 821, 830-31 (9th Cir. 1995).

Finally, a non-examining physician's opinion may constitute substantial evidence for an ALJ's findings if that opinion "is consistent with other independent evidence in the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The opinion of a non-examining physician does not, standing alone, constitute substantial evidence concerning the rejection of the opinion of either an examining physician or a treating physician. *Lester*, 81 F.3d at 831.

In this case, the ALJ performed a detailed assessment of the medical evidence to arrive at Ms. Morgan's RFC. The Commissioner uses a claimant's RFC assessment at steps four and five to determine whether he or she can perform his or her past relevant work and whether he or she can do other work. SSR 96-8p, 1996 WL 374184 *2. The RFC is what the claimant "can still do despite his or her limitations." Id.

The ALJ based his assessment of Ms. Morgan's RFC on an examination of the medical evidence, and in part on his rejection of the opinions of Jennifer Irwin, M.D., and Daniel Neims,

ORDER - 5

Psy.D., that Ms. Morgan's mental health symptoms would significantly limit her ability to perform functions necessary to hold a job. AR 25-30.

The ALJ found that Ms. Morgan had the RFC:

**to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is limited to tasks that can be learned in thirty days or less involving no more than simple work-related decisions and few workplace changes. She is limited to occasional and superficial public interaction and is able to interact with coworkers on a casual or superficial basis, but would not do well as a member of a highly interactive or interdependent work group.**

AR 25 (emphasis in original).

The vocational expert testified that a person with Ms. Morgan's RFC could work as a cleaner, bottle packer, or cafeteria attendant. AR 58-59. The ALJ found Ms. Morgan not disabled at step five. AR 31-32.

A.  Dr. Irwin's Examining Opinion

Dr. Irwin examined Ms. Morgan in October 2014. AR 413. She opined that Ms. Morgan would have difficulty performing work activities on a consistent basis without special or additional instruction, difficulty completing a normal workweek without interruption from psychiatric conditions, and difficulty dealing with usual workplace stress. AR 416-17. She also opined that Ms. Morgan could perform simple and repetitive tasks, would have some difficulty with instructions and interacting with coworkers and the public, and could maintain regular attendance at work. *Id.*

Dr. Irwin listed diagnoses of bipolar disorder, and post-traumatic stress disorder (PTSD). AR 416. After performing a mental status exam, she found Ms. Morgan to show unremarkable appearance, attitude, and behavior. *Id.* She found Ms. Morgan's thought processes to be logical and goal-directed. She observed Ms. Morgan to have a restricted affect, however, and recorded

ORDER - 6

Ms. Morgan's description of her mood as anxious, depressed, and stressed. *Id.* Dr. Irwin recorded mixed results in the cognitive portion of the exam: Ms. Morgan recalled two of three objects after five minutes and could not recall the third with a hint. She could not count backward from 100 by seven. She could perform only the first two steps of a three-step command. AR 416-17.

B.  <u>Dr. Neims's Examining Opinion</u>

Dr. Neims examined Ms. Morgan in July 2014. He opined that Ms. Morgan was markedly impaired in her abilities to adapt to changes at work, ask simple questions or request assistance, communicate and perform effectively at work, complete a normal workday and workweek without interruptions from psychologically based symptoms, and maintain appropriate behavior at work. AR 432.

Dr. Neims observed symptoms of mood disruption, traumatic stress, and anxiety. AR 431. He listed diagnoses of bipolar disorder (depressed with psychotic features), PTSD, and panic disorder with agoraphobia. *Id.* In a mental status examination, Dr. Neims observed that Ms. Morgan had an unremarkable appearance and affect. AR 433. He noted that Ms. Morgan's speech was "[l]ogical but with periods of mis-ordered words," that her attitude and behavior were cooperative but anxious, and that her mood was "[d]ysphoric and anxious with historical reports of expansiveness and manic symptoms." *Id.* He found that Ms. Morgan's thought process and content were "[s]lowed with periods of confusion and poorly sustained attentional function," that on two memory tests (of three) she scored "1/3," and that her concentration was poor. *Id.*

C.  <u>The ALJ's Analysis of Dr. Irwin and Dr. Neims's Opinions</u>

The ALJ gave "some weight" to Dr. Irwin's opinions but rejected her opinions that Ms. Morgan "would have difficulty performing work activities on a consistent basis without special

ORDER - 7

or additional instruction," as well as "difficulty completing a normal workday/workweek without interruptions" and difficulty dealing with workplace stress. AR 29, 417. The ALJ reasoned that Dr. Irwin did not explain why Ms. Morgan would be unable to perform simple tasks on a consistent basis; that the limitations Dr. Irwin found are inconsistent with Ms. Morgan's activities in the record; that those limitations are inconsistent with Ms. Morgan's "generally normal psychiatric presentations during appointments;" and that those limitations are inconsistent with Ms. Morgan's performance on mental status exams. AR 29. The ALJ noted in particular that Ms. Morgan had no difficulty following a three-step instruction for Dr. Irwin and in other exams. AR 29. (The ALJ gave "significant weight" to Dr. Irwin's opinions that Ms. Morgan could maintain regular attendance and perform simple and repetitive tasks and would have some difficulty with instructions and with interactions with coworkers and the public. AR 29.)

Similarly, the ALJ gave "little weight" to Dr. Neims's opinion. AR 29-30. As with Dr. Irwin's opinions, the ALJ explained that the limitations Dr. Neims found were inconsistent with Ms. Morgan's activities, psychiatric presentation at appointments, and performance on mental status exams. AR 29-30. The ALJ also noted that Dr. Neims's evaluation indicates that he relied primarily on Ms. Morgan's self-reports, which the ALJ found not entirely credible. *See* AR 434. And the ALJ noted, finally, that Dr. Neims indicated that he thought Ms. Morgan was exaggerating her symptoms. AR 437 (Dr. Neims checked box for "negative impression management"). The ALJ found that Ms. Morgan "embellished" her symptoms, making Dr. Neims's opinion less reliable. AR 30.

D. The ALJ Gave Specific, Legitimate, and Supported Reasons to Discount Dr. Irwin and Dr. Neims's Opinions

Since Dr. Irwin and Dr. Neims's opinions were contradicted by those of Jerry Gardner, PhD, Thomas Clifford, PhD, and William Chalstrom, PhD, the ALJ needed to offer only specific and legitimate reasons to reject Dr. Irwin and Dr. Neims's opinions. *See Revels*, 874 F.3d at 654. The ALJ's discussion met this standard.

The record supports the ALJ's findings that Ms. Morgan's psychiatric presentation at her appointments was "generally normal" and that her performances on mental status exams were inconsistent with Dr. Irwin and Dr. Neims's opinions of her limitations. The ALJ observed, earlier in his decision, that examining and treating doctors had found Ms. Morgan to have good hygiene and present as well-groomed, friendly, and cooperative, despite showing an anxious affect, AR 319, and to be polite and cooperative, make good eye contact, and show a positive rapport despite a slightly restricted affect, AR 415. Throughout the record, in fact, providers noted that despite at times stating severe complaints, Ms. Morgan displayed appropriate mood and affect. AR 420, 423-24, 429, 455, 459, 463, 467, 473, 478, 485, 492, 496, 517, 520, 521, 524, 526, 545, 546. Those providers made only rare notes of psychiatric symptoms, which were mild overall. *See, e.g.*, AR 485, 500 (both noting mildly dysthymic mood with congruent affect), 506 (noting mildly anxious mood with congruent affect). In the most recent visits noted in the record, Ms. Morgan's provider suggested she decrease her visits because she was "doing very well" and noted that Ms. Morgan had stopped taking medications other than Xanax because she did not need them. AR 542 (July 2016 treatment notes). The record thus supports the ALJ's finding that Ms. Morgan had a "generally normal" psychiatric presentation at her appointments.

The ALJ's statement that Dr. Irwin's examination showed that Ms. Morgan "had no difficulty following three-step instructions" is unsupported. AR 29. Although Dr. Irwin wrote,

ORDER - 9

"She performs a three-step command," she then described that Ms. Morgan did so incorrectly. AR 416 ("She performs 2/3 step command with two steps in the wrong order"). But the record does support the ALJ's finding that Ms. Morgan successfully followed three-step instructions in at least one other exam. AR 29, 319.

Moreover, the record as a whole supports the ALJ's finding that Ms. Morgan's performance on mental status exams throughout the record were inconsistent with the significant limitations that Dr. Irwin and Dr. Neims noted. For instance, Dr. Chalstrom found that Ms. Morgan's remote memory was intact, that she could repeat five digits forward and three digits backward, that she had a fair fund of knowledge and good concentration, could spell world forward and backward and do serial threes slowly but without error, could follow a three-step command and follow a conversation, and could give abstract interpretations of proverbs. AR 319. Dr. Irwin found that Ms. Morgan had normal immediate recall and could recall two of three objects after five minutes, could count backward from 30 by three, correctly interpreted a proverb, and answered that nine quarters make up $2.25. AR 415-16. The other mental status exams in the record show similarly unremarkable results. *See* AR 448 (recent and remote memory intact), 517 (2014 intake assessment noting recent memory deficit and fair judgment and insight, but all else normal); *see also* 429, 485, 492, 496, 500, 506 (all noting that thought process is linear, logical, and goal directed, with intact judgment and insight).

Ms. Morgan contends the ALJ's reasoning was not supported because her mental status exams "contained abnormalities." For instance, Dr. Chalstrom noted that Ms. Morgan showed an anxious affect and a fund of knowledge that was "fair," and that she gave a poor answer to a question about an emergency scenario. AR 319. Dr. Irwin noted that Ms. Morgan failed to follow a three-step instruction, failed to name similarities between a dog and a lion, and failed to count

ORDER - 10

backward from 100 by seven. AR 416. And Dr. Neims found abnormalities in Ms. Morgan's mood, affect, thought process and content, memory, and concentration. AR 433.

But where more than one rational interpretation can be drawn from the evidence, the Court must uphold the ALJ's interpretation. *See Orn,* 495 F.3d at 630. Even in light of the exam findings that Ms. Morgan points to, the ALJ could reasonably interpret Ms. Morgan's performance on mental status exams as inconsistent with Dr. Irwin and Dr. Neims's opined limitations. *See Morgan*, 169 F.3d at 601-02; *Tommasetti*, 533 F.3d at 1038.

As summarized above, the record as a whole contains "'such relevant evidence as a reasonable mind might accept as adequate to support" the ALJ's conclusion that Ms. Morgan's medical record is inconsistent with some of the limitations Dr. Irwin and Dr. Neims found—that Ms. Morgan could not cope with workplace stress, perform work activities consistently without special instruction, or complete a normal workday or workweek without interruption from psychiatric symptoms, and that she would be markedly impaired in adapting to changes, requesting assistance, communicating and performing effectively, and maintaining appropriate behavior. *See Trevizo*, 871 F.3d at 674; AR 416-17, 432. Consequently, the ALJ adequately considered the medical evidence in deciding whether Ms. Morgan's RFC would allow her to find gainful employment.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ properly determined Ms. Morgan to be not disabled. The Commissioner's decision to deny benefits therefore is AFFIRMED.

DATED this 28th day of December, 2017.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge

ORDER - 12